IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| ANTHONY and IASHA FRAZIER, Individually and as Co-Personal Representatives of the Estate of SHAMARA FRAZIER, Deceased, | ) ) ) ) |
| PLAINTIFFS | ) Civil Case No: _05-4077_ ) |
| vs. | ) ) |
| FORD MOTOR COMPANY and CENTURY PRODUCTS CO., Defendants | ) ) ) JURY TRIAL DEMANDED ) |

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
OCT 2 6 2005
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

## ORIGINAL COMPLAINT

Come PLAINTIFFS, ANTHONY FRAZIER and IASHA FRAZIER, Individually and as Co-Personal Representatives of the Estate of Shamara Frazier, deceased, and for their Complaint state:

### PARTIES

1.

ANTHONY FRAZIER and IASHA FRAZIER (hereinafter "PLAINTIFFS") are citizens and residents of the State of Illinois and reside at 14441 South Peoria, Haney, Illinois 60426. Plaintiffs have been duly appointed as Co-Personal Representatives of the Estate of their deceased daughter, Shamara Frazier.

2.

FORD MOTOR COMPANY (hereinafter "FORD"), is a Delaware corporation with its primary office in Dearborn Michigan. FORD is a citizen of a state other than Arkansas, but is authorized to conduct business in Arkansas; conducts business in Arkansas; and derives substantial economic profits from this state. As such, FORD is

subject to personal jurisdiction in this state. FORD's agent for service of process is the CORPORATION COMPANY, 425 West Capitol, Suite 1700, Little Rock, Arkansas 72201

3.

CENTURY PRODUCTS CO. (hereinafter "CENTURY"), is a foreign corporation which may be served by serving its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801. At all times relevant to these causes of action, CENTURY had continuing and systematic contacts within the State of Arkansas by delivering its products into the stream of commerce with the expectation that they would reach and be used in this state. It had minimum contacts with the State of Arkansas and was doing business in the state by, among other things, designing, manufacturing, promoting, and/or distributing child car seats and booster seats, such as that which is involved in this litigation, in the State of Arkansas. The causes of action set out herein arise from such contacts.

4.

Newell Rubbermaid Inc. (hereinafter "NEWELL") is a foreign corporation which may be served by serving its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801. At all times relevant to these causes of action, Newell had continuing and systematic contacts within the State of Arkansas by delivering its products into the stream of commerce with the expectation that they would reach and be used in this state. It had minimum contacts with the State of Arkansas and was doing business in the state by, among other things, designing, manufacturing, promoting, and/or distributing child car seats and booster seats, such as that which is involved in this litigation, in the Sate of Arkansas. The causes of action set out herein arise from such contacts.

5.

Graco Children's Products, Inc. (hereinafter "GRACO") is a foreign corporation which may be served by serving the Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801. At all times relevant to these causes of action, Graco had continuing and systematic contacts within the State of Arkansas by delivering its products into the stream of commerce with the expectation that they would reach and be sued in this state. It had minimum contacts with the state of Arkansas and was doing business in the state by, among other things, designing, manufacturing, promoting, and/or distributing child car seats and booster seats, such as that which is involved in this litigation, in the State of Arkansas. The causes of action set out herein arise from such contacts.

## JURISDICTION AND VENUE

6.

This civil action is brought under theories of strict liability, negligence, breach of warranty and wrongful death.

7.

The Court has jurisdiction over the subject matter of this action based on diversity of citizenship and an amount in controversy exceeding $75,000.00, exclusive of interest and costs.

8.

The Court has personal jurisdiction over the defendants FORD, CENTURY, NEWELL and GRACO based on their numerous contacts with the state.

9.

Venue is proper in this action under 28 U.S.C. 1391 because the accident from which this lawsuit arises occurred in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

10.

The defective vehicle which forms the basis for this suit is a 1997 Ford Explorer, VIN 1FMCU24X4VUC79601, designed, manufactured, assembled, and/or distributed by FORD. The Explorer was first sold by FORD as a 1991 model and was designed to replace the Bronco II. In fact, for a significant period of time, the Explorer was called the "4 door Bronco II." FORD used the Bronco II as the image or target for the design of the Explorer and patterned the testing and analysis of the rollover behavior of the vehicle on the history and testing of the Bronco II. Both the Explorer and Bronco II were originally equipped with virtually identical front and rear suspensions, steering systems, tires, chassis, and steering ratios. In 1995, FORD modified the Explorer by changing front suspension designs from a twin I beam to a SLA suspension.

11.

The defective infant seat which forms the basis for this suit is a SmartFit Plus, Model No. 4529MYT, designed, manufactured, assembled and/or distributed by CENTURY, NEWELL, and/or GRACO.

12.

The crash which forms the basis for this litigation occurred on December 21, 2002, on Interstate 30 in Miller County, Arkansas. Anthony Frazier and Iasha Frazier were traveling in the 1997 Explorer with their four month old daughter, Shamara, on their way to visit relatives for the Christmas holiday. The adults were wearing the

available safety belts and their infant daughter was properly secured in the back seat of the Explorer in a Century SmartFit Plus infant seat.

13.

While driving on I-30, Mrs. Frazier suddenly came upon debris in her lane of traffic. In an effort to avoid the debris and a possible crash associated with striking the debris, Mrs. Frazier reacted by making an emergency avoidance maneuver in the Explorer. The maneuver required a combination of steering and braking. During the course of the maneuver, the Explorer began to oversteer and the vehicle got sideways resulting in an overturning crash. As a result of the rollover, the occupants sustained multiple injuries. Shamara was fatally injured when she was ejected from the infant seat and the vehicle.

## COUNT I
## STRICT LIABILITY

14.

The 1997 Ford Explorer is defective and unreasonably dangerous by design. The inherent defects in the design were present at the time it was manufactured and distributed. The defects in the vehicle were a proximate and producing cause of the injuries, death and damages. At all times relevant to the Complaint, FORD was in the business of designing, manufacturing or otherwise distributing automobiles. The defective nature of the design of the Explorer included defects in design; stability; handling; marketing; instructions; warning; crashworthiness; rollover resistance and controllability. The defective nature of the vehicle includes the following:

14.01   The Explorer is defective in that the design of the "package", which includes the combination of track width and vertical center of gravity height, creates an unreasonable risk of rollover given the uses for which the vehicle was marketed;

14.02   The Explorer is defective from a handling standpoint because it has an unreasonable tendency to get sideways in emergency turning maneuvers and does not remain controllable under all operating conditions as required by Ford guidelines.

14.03   The Explorer is unreasonably dangerous from a stability standpoint because it rolls over instead of slides when loss of control does occur on relatively flat level surfaces during steering maneuvers.

14.04   The combination of 12.01-12.03 creates an extreme risk of rollover that is both beyond the reasonable expectations of consumers and creates a risk that far outweighs any benefit associated with the design.

14.05   The vehicle is unreasonably dangerous because it performs in an unsafe manner when operated in foreseeable turning maneuvers that are consistent with Ford's effort to market the vehicle as a "station wagon" replacement, which Ford had both actual and constructive knowledge would lead to rollover crashes.

14.06   The vehicle was defectively marketed in that consumers were led to believe that the vehicle was safe and stable and could be safely used as a passenger-carrying, station-wagon replacement type vehicle.

14.07   The risk of operating the vehicle as designed outweighed any benefits associated with the design and Ford knew of these risks; knew that the risk, if it materialized, would lead to rollover crashes and severe injuries; and knew that rollover crashes were particularly dangerous.

14.08   Ford knew that this type vehicle – an SUV – was not reasonably safe for inexperienced drivers and knew that the vehicle was not sufficiently capable of maneuvering in emergency conditions that consumers would face on freeways at freeway speeds.

14.09   The Explorer was likewise unreasonably dangerous from a crash protection standpoint in that the vehicle was not equipped with an occupant protection system – roof and safety belt system — that would effectively provide reasonable protection in the event of a rollover. Ford knew that the belt system would not effectively and reasonably restrain occupants involved in freeway-speed rollovers and Ford knew of the risk that the roof was not sufficiently strong to provide a safety cage for the occupants. Despite knowledge of these risks, and the availability of alternative safer designs, Ford intentionally marketed the vehicle to consumers for use as a freeway, passenger-carrying vehicle, and intentionally led consumers to believe that it was safe, stable, and would provide protection.

14.10   Ford knew that the vehicle was not sufficiently equipped and designed to perform safely with child restraint seats.

14.11  Ford had both actual and constructive knowledge of the existence of safer, alternative designs from both a stability and crash protection standpoint.

14.12  Ford willfully, wantonly, and consciously marketed the Explorer for the aforementioned uses with full knowledge of the risks inherent in the vehicle design, yet misled consumers and withheld critical information about the unsafe nature of the vehicle in conscious disregard for the public.

The defective nature of the vehicle was a proximate and producing cause of the accident, injuries, death of Shamara Frazier and damages suffered by the Plaintiffs. Ford is therefore strictly liable for supplying a defective and unreasonably dangerous product that resulted in personal injury, death and property damage.

A safer alternative design was economically and technologically feasible at the time the product left control of Ford.

15.

The infant seat in question was defective and unreasonably dangerous because it failed to operate as a consumer would expect and the risks of ejection in a rollover far outweighed any benefits associated with the design. The seat was defective at the time it was manufactured and distributed. At all times relevant to the Complaint, CENTURY, NEWELL and GRACO were in the business of designing, manufacturing, assembling, testing, and distributing infant and child seats. CENTURY, NEWELL and GRACO had a duty to design, manufacture, market, and/or distribute the SmartFit infant seat involved in the accident in question in such a manner that did not cause the infant seat to be unreasonably dangerous and expose consumers to unnecessary risks of injury or death. The defective nature of the seat was a proximate and producing cause of the child's death and damages. CENTURY, NEWELL and GRACO'S misconduct includes, but is not limited to:

15.01  Designing a defective infant seat;

15.02   Failing to adequately test the seat;

15.03   Failing to adequately inform and/or warn consumers of the risks associated with the infant seat when involved in a rollover-type accident.

15.04   Failing to use available, safer alternative design methods that would prevent and/or reduce the risk of ejection of children in any form of crash.

## COUNT 2
## NEGLIGENCE

16.

At all times relevant this Complaint, Ford was in the business of supplying motor vehicles for use on the public roadways. Ford held itself out to the public as having specialized knowledge in the industry, especially with respect to SUVs. As such, Ford owed consumers, including the Plaintiffs, a duty to use reasonable care in the design, manufacture, preparation, testing, instructing, and warnings surrounding the Explorer. Ford violated this duty by negligently supplying a vehicle that was defective. The negligent acts include but are not limited to the following acts or omissions;

16.01   Negligently designing the vehicle from a handling and stability standpoint;

16.02   Negligently designing the vehicle with poor rollover resistance;

16.03   Negligently designing and testing the vehicle from an occupant protection standpoint, including with available child restraint technology;

16.04   Negligently testing of the vehicle from a handling and stability standpoint;

16.05   Negligently failing to test the vehicle to ensure the design provides reasonable occupant protection in the event of a rollover;

16.06   Failing to adequately train and assist dealers in the dangers associated with the vehicle;

16.07   Failing to disclose known defects, dangers, and problems;

160.8   Negligently marketing the vehicle as a safe and stable passenger vehicle;

16.09   Failure to meet or exceed internal corporate guidelines;

16.10   Negligently advertising the vehicle as safe and stable;

16.11   Failing to inform the consumer, including these Plaintiffs, of the information Ford knew about rollover risk in SUVs, and specifically the Explorer, thus depriving the Plaintiffs of the right to make a conscious and free choice;

16.12   Failing to comply with the state of the art in the automotive industry insofar as providing reasonable occupant protection in a rollover

16.13   Failing to comply with applicable and necessary Federal Motor Vehicle Safety Standards;

16.14   Failing to notify consumers, as required by law, that a defect exists in the vehicle that relates to public safety;

16.15   Failing to recall the vehicle or; alternatively, retrofitting the vehicle to enhance safety.

These acts of negligence were a proximate and producing cause of the accident, injuries, and damages suffered by the Plaintiffs. The dangers referenced earlier were reasonably foreseeable or scientifically discoverable at the time of exposure.

17.

At all times relevant to the Complaint, CENTURY, NEWELL and GRACO were in the business of, among other things, providing protective devices for children being transported in autos, including SUVs. As such, CENTURY, NEWELL and GRACO had a duty to act reasonably and prudently in the design, manufacture, marketing, testing and/or distribution of the Century SmartFit infant seat involved in this accident and others similar to it. CENTURY, NEWELL and GRACO breached their duties, by and among other acts and/or omissions, designing, manufacturing, distributing, and marketing an infant seat that was unsafe to use and/or occupy because of its propensity, as designed and manufactured, to not perform properly in the event that the vehicle that it was secured in was involved in a crash, including a rollover, in the following respects:

17.01   Negligent design;

17.02   Negligent testing;

17.03   Negligent marketing;

17.04   Negligently failing to provide consumers with adequate information about the inadequacies in the design of the system in question, particularly in rollover-type crashes.

These acts of negligence were a proximate and producing cause of the accident, injuries, and damages suffered by the deceased. The dangers referenced earlier were reasonably foreseeable or scientifically discoverable at the time of exposure.

## COUNT 3
## BREACH OF WARRANTY

18.

At all times relevant to the complaint, Ford was a "merchant" in the business of supplying "goods" and/or "products" sold for consumer usage. As such, Ford breached the warranties of merchantability and fitness for a particular purpose in that the 1997 Explorer was not fit for ordinary use or for the intended use for which it was purchased. These breaches of warranty proximately resulted in the accident, injuries, death of Plaintiffs' infant daughter and damages suffered by the Plaintiffs. The product was unfit as previously described in Counts 1 and 2. Notice has been provided as required by law.

19.

At all times relevant to the complaint, CENTURY, NEWELL and GRACO were a "merchants" in the business of supplying "goods" and/or "products" sold for consumer usage. As such, CENTURY, NEWELL and GRACO breached the warranties of merchantability and fitness for a particular purpose in that the Century SmartFit infant

seat was not fit for ordinary use or for the intended use for which it was purchased. These breaches of warranty proximately resulted in the death of Plaintiffs' infant daughter and the damages associated with the death. Notice has been provided as required by law.

### COUNT 4
### WRONGFUL DEATH

20.

Pursuant to A.C.A. 16-62-102, the Plaintiffs, as the duly appointed Co-Personal Representatives of the Estate of Shamara Frazier, seek damages against both Ford and Century, jointly and severally, for the wrongful death of Shamara Frazier.

### DAMAGES

21.

As a proximate result of the conduct of FORD, CENTURY, NEWELL and GRACO as fully set forth herein, the Plaintiffs have suffered injuries and damages. The Plaintiffs are seeking monetary damages from FORD, CENTURY, NEWELL and GRACO to compensate them for the following elements of damage;

21.01   Past and future medical expense;

21.02   Past and future loss of earnings;

21.03   Future loss of earning capacity;

21.04   Permanent injury;

21.05   Past and future mental anguish;

21.06   Past and future pain and suffering;

21.07   Loss of society and companionship;

21.08   Loss and value of life and life enjoyment;

21.09   Property damage;

21.10   Funeral expenses;

21.11   Conscious pain and suffering;

The Plaintiffs reserve the right to prove the amount of damages at trial.

22.

In addition to compensatory damages, the Plaintiffs are seeking punitive damages from FORD, CENTURY, NEWELL and GRACO because the conduct of each constitutes reckless, grossly negligent, willful, wanton, malicious behavior that needs to be punished in order to deter others from participating in similar future misconduct. The acts set forth in this complaint were steps taken by these companies with knowledge of the associated risks to consumers. These companies took the steps set forth herein in conscious disregard for the potential consequences and under circumstances for which a jury could determine that they each willfully, wantonly, recklessly and maliciously endangered human life. Each of these companies has been sued for precisely the same conduct. All are and were fully aware of their design decisions, and each company deserves to be punished in a civil forum for their malicious misconduct. The amount of punitive damages to be awarded is within the discretion of the jury.

## CHALLENGE TO REFORM ACT

23.

As set forth previously, in addition to actual damages, the Plaintiffs are seeking punitive damages for the reckless, malicious conduct of the Defendants and for FORD, CENTURY, NEWELL and GRACO'S conscious disregard for the safety of the traveling public, including the Plaintiffs. The amount of punitive damages is for a jury to decide and should not be limited by the Civil Justice Reform Act of 2003 ("Reform Act"),

because the Reform Act violates the Arkansas and United States Constitutions. The violations include, but are not limited to, the following:

23.01 Violation of the separation of powers clause of the state and federal constitutions;

23.02 It unconstitutionally limits the amount of damages under an otherwise constitutional system that is dependent on facts and the jury.

23.03 It denies equal protection in that it favors certain classes of people over other classes of people.

23.04 It attempts to arbitrarily assign or cap value without regard to the facts inconsistent with due process and equal protection.

23.05 It infringes on the constitutional powers of the jury.

23.06 It effectively denies the right to a jury trial as promised in the constitution.

24.

Plaintiffs reserve the right to amend their complaint by adding additional counts as discovery continues.

25.

Plaintiffs request a trial by jury on all issues.

WHEREFORE, PLAINTIFFS pray for judgment on their complaint against FORD, CENTURY, NEWELL and GRACO and for any and all other just relief this court may deem appropriate.

Respectfully submitted,

BY: _____
Tab Turner   by MST
TURNER & ASSOCIATES, P.A.
4705 Somers Avenue
Suite 100
North Little Rock, AR 72116